## Carson v. PennDOT

*Joseph E. Janc,* for appellant.

*Frank M. O'Neill, deputy attorney general,* for PennDOT.

O'BRIEN, *J.,* September 26, 1991—

## FINDINGS OF FACT

(1) On June 6, 1991, while a Pennsylvania state policeman was operating a radar speed device on Route 115 in Tobyhanna Township, Monroe County, Pennsylvania, he timed petitioner's motor vehicle traveling at a speed of 72 miles per hour.

(2) When the officer stopped petitioner's vehicle, he detected a strong odor of alcohol on the breath of petitioner and observed that his eyes were blood shot.

(3) After the petitioner performed poorly on three field sobriety tests requested by the officer, the officer placed him under arrest for driving under the influence of alcohol.

(4) When the petitioner was seated in the officer's patrol car, the officer advised the petitioner of the Implied Consent Law and advised him that if he refused to take a chemical test of his blood alcohol content, his license would be suspended for a period of one year. The officer further advised the petitioner that the only test available was a blood test. The petitioner responded that he was afraid of needles and would be willing to take a breathalyzer test but declined to submit to a blood test.

(5) Instead of driving to the Pocono Medical Center where a blood test would have been administered, the officer drove the petitioner back to the state police barracks. While at the state police barracks, the officer again advised petitioner of the Implied Consent Law and also stated that he was aware of a limited license which would allow the petitioner to drive to and from work during his suspension.

(6) The petitioner again offered to take a breathalyzer test but the officer advised that a breathalyzer operator was not available. The petitioner

decided that in view of the availability of a license to drive to work, he would decline the request for a blood test.

## DISCUSSION

In order to sustain a license suspension under 75 Pa.C.S. 1547, the department must prove that the licensee (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal to do so would result in a license suspension. Once the Commonwealth meets its burden, the burden shifts to the licensee to prove that he was unable to make a knowing and conscious refusal. *Cartwright v. Penn-DOT,* 138 Pa. Commw. 325, 587 A.2d 909 (1991). In *McCullough v. PennDOT,* 122 Pa. Commw. 415, 551 A.2d 1170 (1988), the court held that a licensee's offer to take a breath or urine test did not vitiate his express refusal to take the blood test. Fear of needles is not a justification for refusing to take the required blood test. The court noted that anything substantially short of an unqualified unequivocal assent to take the chemical test amounted to a refusal and was sufficient to support the suspension of a driver's operating privilege. The court clearly stated:

"This court has consistently interpreted section 1547 of the code to deny the licensee the option of choosing which chemical test to take. It is equally well established that a police officer with reasonable grounds to believe that a licensee was operating a vehicle under the influence has unfettered discretion under section 1547 to request a licensee to submit to a breath, blood or urine test." *Id.* at 419, 551 A.2d at 1172.

Similar holdings can be found in *PennDOT v. Curran,* 107 Pa. Commw. 1, 526 A.2d 1265 (1987) and *Pearson v. Commonwealth,* 122 Pa. Commw. 91, 551 A.2d 394 (1988).

However, in *PennDOT v. Osborne,* 135 Pa. Commw. 297, 580 A.2d 914 (1990), the Commonwealth Court reversed a suspension on facts most similar to the case at bar. In that case, after explaining the provisions of the Implied Consent Law, the officer advised the driver that he was aware of a special work permit which would allow him to drive to and from work during his suspension. In sustaining the driver's appeal, the Commonwealth Court stated the following:

"Essentially, DOT urges us to take the position that once a warning under section 1547 is properly given to a driver, any subsequent misinformation given to the driver is harmless. This is contrary to the well-established principle that an appeal of a suspension imposed pursuant to this section will be sustained if the driver proves by competent evidence that he was unable to make a knowing and conscious refusal. *Waigand v. Commonwealth,* 68 Pa. Commw. 541, 449 A.2d 862 (1982). In the present case, the trial court determined that the arresting officer's statement about the availability of a special license prevented Osborne from making a knowing and conscious refusal, and we agree."

In the case at bar, both the petitioner and the officer testified that they had a conversation about the "occupational limited license." Although the officer was unsure whether this conversation occurred before or after the petitioner's refusal, we find petitioner's testimony credible that this was a factor in his decision to refuse the blood test. Since 75 Pa.C.S. 1553 specifically prohibits the issuance of an occupational limited license to a person whose

license is suspended for refusal to submit to a chemical test or to a person who has been convicted of driving under the influence, the officer's advice was clearly misinformation. Therefore, we conclude that the petitioner has met his burden proving that due to the misinformation provided by the officer, he was unable to make a knowing and conscious refusal.

## CONCLUSIONS OF LAW

(1) The officer had reasonable grounds to believe the petitioner was driving his motor vehicle under the influence of alcohol and properly placed him under arrest.

(2) The officer advised the petitioner of the Implied Consent Law and that his operating privileges would be suspended for a period of one year if he refused to submit to a chemical test. However, the officer also advised the petitioner of the availability of the occupational limited license which was misinformation since such license is not available to a person in petitioner's circumstance.

(3) The petitioner did not make a knowing and conscious refusal to submit to the chemical test to determine blood alcohol content.

## ORDER

And now, September 26, 1991, the order of the Department of Transportation of the Commonwealth of Pennsylvania dated July 18, 1991, suspending the operating privileges of Paul J. Carson for a period of one year, is reversed.